FILED
03 MAR 17 PM 1:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR 17 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| CARLA SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 01-PT-3090-M |
| ) | |
| DEBRA MITCHELL, d/b/a ) | |
| MITCHELL AUTO SALES, and ) | |
| STEVE MITCHELL, d/b/a ) | |
| MITCHELL AUTO SALES, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon plaintiff Carla Smith's ("Smith") Motion for Summary Judgment (Doc. 16), filed on February 6, 2003.

### FACTS AND PROCEDURAL HISTORY

Smith is a resident of Etowah County, Alabama. Defendants Debra Mitchell and Steve Mitchell are individuals engaged in the business of selling automobiles under the name Mitchell Auto Sales (collectively "Mitchell"), an unincorporated entity in Gadsden, Alabama. *See* Compl. at ¶ 3; Answer at ¶ 3.

On February 23, 2001, Smith went to Mitchell Auto Sales looking for a used car to get her to and from work. Smith was interested in purchasing a 1989 Nissan Maxima. Debra Mitchell approached Smith, identified herself as the owner of Mitchell Auto Sales, and suggested that Smith test drive the vehicle, as someone else was also interested in it. Smith test drove the vehicle, and upon her return she met with Debra Mitchell about purchasing the vehicle. Smith noticed that the cash price was listed as $4,995, instead of the $4,500 price that was listed

19

on the windshield of the car. Smith inquired about the difference, and was told that it was an interest charge. *See* Smith Aff. at 1. Smith was then charged an additional finance charge of $486.38, which was disclosed as the only finance charge. *See* Pl. Ex. 3. Smith also was charged a $35 "processing or customer service fee"[1], which she alleges was not charged in comparable cash transactions by Mitchell. *Id.* However, Smith states that the fee "may have been for preparation of the Truth In Lending documents." *See* Pl. Br. at 3. According to Smith, Mitchell has admitted that the amount of the Finance Charge, Annual Percentage Rate, and Amount Financed were not accurately disclosed as required by 15 U.S.C. § 1638 and Regulation Z § 226.18. *See* Req. for Admis ("Pl. Ex. 1") at 10-12. Also according to Smith, Mitchell has admitted that it has not had a retail cash sale in the past five years. *Id.* at 6. Smith signed the paperwork and took possession of the vehicle.

Within a week of Smith's taking possession, complete transmission failure occurred, crippling the vehicle and substantially impairing its value. *See* Smith Aff. at 1; Pl. Ex. 1 at 15-17. Smith had the vehicle towed to a local wrecker service, and made oral demands upon Mitchell to fix the vehicle. *See* Smith Aff. at 1-2; Pl. Ex. 1 at 21. Mitchell refused to fix the vehicle, instead offering to reduce the outstanding obligation by $500.00. *See* Smith Aff. at 2. Smith refused the offer. Mitchell took possession of the vehicle from the wrecker service. *Id.*; Pl. Ex. 1 at 20. Smith retained counsel, and by letter dated July 16, 2001, revoked acceptance of the vehicle, cancelled the contract, and demanded a refund of all payments made. *See* Pl. Ex. 1,

---

[1] Smith financed a total of $3,197.40. The cash price ($4995), plus the "processing and customer service fee" ($35), plus a UCC filing fee ($16.50), less Smith's down payment ($2000) comes to $3046.50. The court assumes that the difference is due to taxes or other fees.

attached Ex. A.² On August 6, 2001, Smith gave Mitchell written notice of her claim under the Alabama Deceptive Trade Practices Act, demanding a refund of the hidden finance charge of $495. *See* Pl. Ex. 1, attached Ex. B.

Smith filed this lawsuit on December 4, 2001. Smith alleges violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* (Count I) and the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.* (Count II). She also seeks recovery of the $2,200 that she has paid Mitchell, under the theory of revocation of acceptance found in Ala. Code § 7-2-608 (Count III). Smith now seeks summary judgment on all counts.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary

---

²Smith had paid a $2,000 down payment and $200 in advance payments.

deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

### I. Truth in Lending Act

Smith argues that the transaction at issue is covered by the Truth in Lending Act ("TILA"), because it involves a consumer credit contract where a finance charge was imposed and for which there are more than four installment payments. *See* 12 C.F.R. § 226.2(17)(i) (definition of "Creditor"). Smith admits that Mitchell has not conceded that it regularly extends credit, but argues that the inference is there, given that Mitchell is engaged in the business of selling cars and has admitted that it has not had a retail cash sale in the past five years. Smith argues that the disclosures provided by Mitchell were all inaccurate beyond the tolerances allowed. Smith notes that any one violation of the TILA triggers statutory damages of twice the fiannce charge. *See* 15 U.S.C. § 1640. However, she concedes that she is entitled to only one

4

recovery, no matter how many violations are proved. See 15 U.S.C. § 1640(g).

Smith cites 15 U.S.C. § 1605(a), which defines a finance charge as, in part, the sum of "all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction." Under this definition, Smith argues, the $35 fee and the $495 added to the "sticker price" are both finance charges. Thus, according to Smith, Mitchell has inaccuartly disclosed the Amount Financed, the Finance Charge, and the Annual Percentage Rate. See Pl. Ex. 3.

Smith notes the case *In re Russell*, 181 B.R. 616 (M.D. Ala. 1995), in which the court recognized that

> One means of circumventing the objectives of the Truth in Lending Act . . . was that of "burying" the cost of credit in the price of goods sold. . . . Thus in many credit transactions in which creditors claimed that no finance charge had been imposed, the creditor merely assumed the cost of extending credit as an expense of doing business, to be recouped as part of the price charged in the transaction.

*Id.* at 620-21 (citing *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 377 (1973)). See also *In re Stewart*, 93 B.R. 878 (Bankr. E.D. Pa. 1988). Smith argues that Mitchell was also burying the extra finance charges. She contends that she is entitled to the $495 and $35 as actual damages, plus statutory damages of twice the total finance charge.

## II. Alabama Deceptive Trade Practices Act

Smith also argues that charging her $4,995 for the vehicle instead of the $4,500 sticker price is a violation of the Alabama Deceptive Trade Practice Act ("DTPA"). Smith alleges that Mitchell's conduct falls under the "catch all" provision of Ala. Code § 8-19-5(27), which prohibits "engaging in any other unconscionable, false, misleading, or deceptive act or practice

5

in the conduct of trade or commerce." Smith also cites Ala. Code § 8-19-5(9), which prohibits "advertising goods or services with the intent not to sell them as advertised." Smith cites *Affrunti v. Village Ford Sales, Inc.*, 597 N.E.2d 1242 (Ill. App. Ct. 1992), which construed an Illinois statute with identical language. In *Affrunti*, the court stated that

> To fall within the purview of the Act, it need only be shown that the defendant is engaged in a trade or commerce and that he has committed unfair or deceptive acts or practices in the conduct of that trade or commerce. The Act incorporates the definition of "deceptive trade practice" set forth in the Uniform Deceptive Trade Practices Act. This definition includes "advertis[ing] goods or services with the intent not to sell them as advertised."
>
> In the instant case, while the defendant's sales manager testified that the car prices were listed on the cars themselves, the plaintiff stated that no price was listed on the 1986 Celebrity. The plaintiff asked the salesman, Galaraza, the price of the car. However, after first stating that he did not know the price, Galaraza quoted a price that was higher than the advertised price. Although the price was negotiable, the defendant ought to have informed the plaintiff of the advertised sale price since the advertisement was placed to draw in customers. There is no question that the price was a material fact. We find that the evidence presented supports the conclusion that the defendant advertised the car with the intent not to sell it as advertised. Therefore, the defendant's failure to disclose the advertised sale price constituted deceptive conduct under the Act.

*Id.* at 1244 (citations omitted).

Here, Smith argues, Mitchell engaged in a deceptive trade practice by representing that the increase in price was because of an interest charge, and then including the interest charge as part of the cash price. Smith points out that she notified Mitchell of her claim, as is required by Ala. Code § 8-9-10(e). She argues that she is entitled to recover three times her actual damages, or $1,485.

### III. Revocation of Acceptance

Smith cites Ala. Code § 7-2-608, which provides:

§ 7-2-608. Revocation of acceptance in whole or in part.

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
>
> (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
>
> (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
>
> (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Smith contends that her remedy is found in Ala. Code § 7-2-711, which provides:

> § 7-2-711. Buyer's remedies in general; buyer's security interest in rejected goods.
>
> (1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance, then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (Section 7-2-612), the buyer may cancel, and whether or not he has done so may, **in addition to recovering so much of the price as has been paid** . . .

(Emphasis added). Smith asserts that in order to claim revocation of acceptance, a plaintiff must show (1) a substantial impairment of the value of the goods due to a defect, (2) that the seller has had a reasonable time to cure, and (3) that the buyer has given adequate notice of revocation. *See Dickson v. U-J Chevrolet Co.*, 454 So. 2d 964, 966 (Ala. 1984). Smith asserts that Alabama courts have routinely applied § 7-2-608 to consumer transactions, whether the goods are new or used. Smith cites extensively from *Page v. Dobbs Mobile Bay, Inc.*, 599 So. 2d 38 (Ala. Civ. App. 1992), which involved the purchase of a new van. In *Page*, the court stated that

> This court likewise concludes that § 7-2-608 should properly be viewed as

7

affording a remedy in situations where a seller has successfully disclaimed its own warranties. To hold otherwise would be to place the risk of loss on the buyer and to find little meaningful obligation on the part of the seller, who receives substantial benefits from the sale of its goods. Our interpretation of § 7-2-608 is also consistent with the principle that, when a buyer's remedy fails of its essential purpose, the buyer may resort to further remedies provided by the Commercial Code in order to gain the substantial value of the bargain. Following jury verdicts in favor of Ford and Zimmer on the warranty claims, the Pages' remaining adequate remedy was provided by § 7-2-608.

We find that in order to revoke their acceptance, the Pages--once they had otherwise met the requirements of § 7-2-608--were obligated to show only that the van's nonconformity substantially impaired its value to them, and that it was not necessary that they prove fraud or breach of warranty on the part of Treadwell.

Treadwell does not dispute that the Pages attempted to revoke their acceptance within a reasonable time. § 7-2-608(2). Instead it maintains that the value of the defective van was not substantially impaired so as to permit a revocation of acceptance. § 7-2-608(1). However, the record shows that in October 1987, the date determined by the trial court to be the date of revocation, there were numerous problems with the van. The Pages had been obliged to make several long trips to have the van serviced and were left without use of the van for extended periods of time. Despite Treadwell's disclaimer of its own warranties, it had offered for sale to the Pages a new conversion van warranted by Ford and Zimmer, and the Pages were entitled to believe that they had bargained for a significantly trouble-free automobile whose defects could be cured within a reasonable time. However, after repeated attempts and prolonged inconvenience to the buyers, a number of defects remained. (Several of these problems persisted at the time of trial.) Under the circumstances it was not unreasonable for the Pages to decide that the van's defects were incurable and to seek legal recourse.

Whether there is substantial impairment of value is a question for the trier of fact. There was clear evidence before the court in the present case that the van's nonconformity with what the Pages were entitled to believe they would receive-- i.e., a reasonably reliable and defect-free new van--substantially impaired the value of a commercial unit for which the Pages had made a significant outlay of money. We conclude that the trial court was correct in finding that the Pages had met the requirements of § 7-2-608 in order to revoke their acceptance of the van.

*Id.* at 42-43 (citations omitted). Smith argues that revocation of acceptance is also an available remedy for purchasers of defective used automobiles. *See Cole v. First Nat'l Bank of*

*Tuskaloosa*, 485 So. 2d 717, 719 (citing § 7-2-608 while discussing revocation).

Smith notes that within five days of purchasing the vehicle, the transmission completely failed. Repairs would have cost $1,500, and a lack of repairs would have "substantially impaired the value" of the vehicle. Smith asserts that she repeatedly spoke with Mitchell about repairing the vehicle and told Mitchell where the vehicle was. Mitchell ultimately took possession of the vehicle, but never repaired it. Smith argues that under these facts, she is entitled, pursuant to § 7-2-711, to recover the $2,200 that she has paid toward the price of the vehicle.

## CONCLUSIONS OF THE COURT

In view of the fact that the requests for admissions were not responded to, and in further view of the failure of the defendants to respond to plaintiff's motion for summary judgment, the motion will be granted. Within 10 days, the plaintiff will submit a proposed final judgment.

This _17th_ day of March 2003.

/s/ Robert B. Propst
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE